**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PB FARRADYNE, INC.,

        Plaintiff,
  v.

THOMAS D. PETERSON, et al.,

        Defendants.
                                           /

No. C 05-03447 SI

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

On January 13, 2006, the Court heard oral argument on defendants' motion to dismiss and/or strike. Having carefully considered the parties' papers and the arguments of counsel, the Court hereby GRANTS in part and DENIES in part defendants' motion.

**BACKGROUND**

On August 25, 2005, plaintiff PB Farradyne, Inc. ("Farradyne") filed this patent action against defendants Thomas Peterson, an individual, and Traffic Assist, a California company. Farradyne seeks declaratory judgment of non-infringement, invalidity and unenforceability of two patents owned by Peterson, U.S. Patent Nos. 5,523,950 ("'950 patent") and RE38,724 ("'724 patent").

The '950 patent is titled "Method and Apparatus for Providing Shortest Elapsed Time Route Information to Users," and was filed on May 8, 1995 and issued on June 4, 1996. *See* Complaint, Ex. A. The '724 patent is a reissued patent titled "Method and Apparatus for Providing Shortest Elapsed Time Route and Tracing Information to Users," and was filed on November 21, 2000, and reissued on April 12, 2005. The '724 patent is a reissue of U.S. Patent No. 5,845,227, with the same title, which was filed on February 9, 1996 and issued on December 1, 1998. *Id.* at Ex. B. Defendants state that these patents "generally relate to a system of calculating for a commuter the quickest way to drive

1 between two points, based on real-time information about traffic speeds on various road segments."
2 Motion to Dismiss at 2.

3    According to the Complaint, the Metropolitan Transportation Commission ("MTC") in the San
4 Francisco Bay Area approved and implemented a design for what is commonly known as MTC's 511
5 system for obtaining automobile trip information. Complaint ¶ 9. Under its contract with MTC,
6 Farradyne supplies the 511 system. *Id.*

7    Since at least June 2003, Peterson has alleged that Farradyne's 511 system infringes both the
8 '950 patent and the '724 patent (or would infringe the '724 patent when reissued). *Id.* at ¶ 10. Between
9 2003 and 2005, the parties and their counsel met and exchanged correspondence regarding Peterson's
10 infringement allegations. *Id.* at ¶¶ 10-15, Ex. D-I. In a letter dated June 2, 2005, Peterson's counsel sent
11 Farradyne a letter stating that "[t]here is only one way that PB Farradyne can convince us there is no
12 infringement, and that is to disclose to Mr. Peterson the current and correct source code of the pertinent
13 routing software. If PB Farradyne is not prepared to provide such source code, then Mr. Peterson shall
14 be forced to file a lawsuit to enjoin the use of the MTC system and to seek damages." *Id.* at Ex. I. The
15 Complaint alleges that Farradyne has not agreed to disclose its source code, and thus has a reasonable
16 apprehension of an imminent suit by Peterson and/or Traffic Assist for alleged infringement of the '950
17 and '724 patents. *Id.* at ¶ 15.

18    Defendants have filed a motion to dismiss and/or strike, contending, *inter alia*, that the Court
19 should decline jurisdiction over this declaratory relief action because Farradyne filed suit only to gain
20 a superior bargaining position. In support of their motion, defendants have submitted correspondence
21 between the parties that plaintiff did not attach to the Complaint. In a letter dated June 24, 2005,
22 Farradyne stated that it would consider Peterson's request to review the source code subject to an
23 appropriate protective order. *See* Erickson Decl. Ex. J. Peterson responded the same day, saying that
24 "the basic limitation on review of the source code is acceptable," and asking for a draft proposed
25 protective order. *Id.*, Ex. K. Peterson sent another letter on July 6, 2005, stating that the "failure to
26 provide the Protective Order appears to be a delaying tactic," and asking for a date that the draft would
27 be provided. *Id.*, Ex. L. Farradyne did not respond to that letter, and instead filed the instant action on
28 August 25, 2005.

2

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974), overruled on other grounds by *Davis v. Scherer*, 468 U.S. 183, 104 S. Ct. 3012 (1984).

In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings. *See United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has repeatedly held that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F. 3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

**1.    Jurisdiction over declaratory judgment**

Defendants contend that the Court should decline jurisdiction over this declaratory judgment action because plaintiff has abused the declaratory judgment device. Defendants argue that prior to the filing of the complaint, the parties were actively negotiating a resolution, and that plaintiff abruptly terminated these negotiations and filed suit. Defendants suggest that plaintiff did so in order to obtain a more favorable bargaining position and to undermine the value of Peterson's patents. Defendants also contend that by omitting the post-June 2, 2005 correspondence between the parties in which defendants agreed to enter into a protective order drafted by plaintiff, plaintiff has not been forthright with the Court. Defendants also argue that Farradyne has failed to explain, both in the Complaint and in the parties' negotiations prior to the filing of the lawsuit, any reason for disputing infringement, and that

this is a further reason to decline jurisdiction.

Although plaintiff "categorically denies" that negotiations were ongoing when it filed the Complaint, plaintiff does not provide any meaningful explanation for why it abandoned the negotiations and failed to draft a protective order. Instead, plaintiff simply contends that this Court should retain jurisdiction because it is undisputed that there is a live controversy between the parties.

"When there is an actual controversy and a declaratory judgment would settle the legal relations in dispute and afford relief from uncertainty or insecurity, in the usual circumstance the declaratory judgment is not subject to dismissal." *Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir.1993). Here, it is undisputed that there is a live dispute over infringement. Although defendants have raised some questions about plaintiff's actions prior to the filing of the Complaint, defendants have not submitted evidence suggesting that plaintiff filed suit in order to enhance its bargaining position, as opposed to plaintiff simply abandoning the parties' negotiations. *Cf. EMC Corp. v. Norand Corp.*, 89 F.3d 807, 814-15 (Fed. Cir. 1996) (affirming district court's dismissal of declaratory judgment action where court found suit filed to disrupt licensing negotiations with third parties). Accordingly, the Court DENIES defendants' motion to the extent defendants request the Court to decline jurisdiction.

**2.    "Pleading a statute" on invalidity**

The Complaint alleges, "To the extent they are alleged to be infringed, the claims of the '950 and '724 patents are invalid for failure to meet one or more of the requirements of Title 35, United States Code, including the requirements of sections 102, 103, 112 and/or other applicable statutes." Complaint ¶ 20.

Defendants contend, and the Court agrees, that such general, conclusory allegations are insufficient because they do not provide fair notice of plaintiff's claims. In *Qarbon.com Incorporated. v. eHelp Corporation*, 315 F. Supp. 2d 1046 (N.D. Cal. 2004), a defendant filed a counterclaim alleging that "the '441 patent is invalid and void under the provisions of Title 35, United States Code §§ 100 *et seq.*, and specifically §§ 101, 102, 103 and/or 111 . . . ." The court held that simply pleading the statute to allege patent invalidity was "radically insufficient" because it did not provide the other party with a basis for assessing the claim. *Id.* at 1050-51 (internal citation omitted). "Effective notice pleading

4

should provide the defendant with a basis for assessing the initial strength of the plaintiff's claim, for preserving relevant evidence, for identifying any related counter– or cross–claims, and for preparing an appropriate answer." *Id.* at 1051 (quoting *Grid Sys. Corp. v. Texas Instruments, Inc.*, 771 F. Supp. 1033, 1037 (N.D. Cal. 1991)). Similarly, in *Advanced Cardiovascular Systems, Inc. v. Medtronic Inc.*, 41 U.S.P.Q.2d 1770 (N.D. Cal. 1996) , the court struck an affirmative defense alleging patent invalidity "for failure to satisfy the requirements of patentability contained in Title 35, United States Code, including but not limited to, section 101, 102, 103 and/or 112," because these sections provide numerous grounds for invalidating a patent, and thus the plaintiff was not provided fair notice of the basis for this defense. *See* 41 U.S.P.Q.2d at 1773.

Here, plaintiff's allegations are virtually identical to those found deficient in *Qarbon.com* and *Advanced Cardiovascular*. Indeed, as defendants note, the allegations at issue here are arguably broader because the Complaint alleges invalidity based on, *inter alia*, "other applicable statutes." Complaint ¶ 20. Plaintiff's complaint does not provide defendants with sufficient notice of the basis for its claims, and accordingly the Court GRANTS defendants' motion to dismiss with leave to amend.

### 3.     **Inequitable conduct**

The Complaint alleges, "By reason of inequitable conduct before the United States Patent and Trademark Office during the prosecution of the applications that issued as the patents-in-suit, including by, *inter alia*, making false statements and/or failing to disclose information material to patentability, the '950 and '724 patents are unenforceable." Complaint ¶ 23. This is the only allegation in the Complaint alleging inequitable conduct.

Citing numerous opinions by judges in this District and a Federal Circuit decision, defendants contend that allegations of inequitable conduct must meet the heightened pleading requirements of Federal Rule of Procedure 9(b), and that the allegations contained in the complaint are deficient because they do not specifically plead materiality and intent to deceive, nor do they allege any specific details as to the alleged misrepresentations. In response, plaintiff cites a single 1988 district court decision, and argues generally that the allegations in the complaint meet the requirements of "notice pleading." Alternatively, plaintiff requests leave to amend the complaint.

5

Defendants are correct that allegations of inequitable conduct "must be pled with particularity." *Ferguson Beauregard/Logic Controls v. Mega Systems, LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003); *see also America, Inc. v. Genus, Inc.*, 2002 WL 24444, *2 (N.D. Cal. Jan. 9, 2002) ("Allegations of inequitable conduct involve fraud and are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)."); *Sun Microsystems, Inc. v. Dataram Corp.*, 1997 WL 50272, *4 (N.D. Cal. Feb. 4, 1997) ("In pleading inequitable conduct, a party cannot merely rely on vague allegations of fraud and deception, but instead must specify the time, place and content of any alleged misrepresentations to the PTO.").

Accordingly, the Court GRANTS defendants' motion to strike plaintiff's inequitable conduct allegations, and GRANTS plaintiff leave to amend the complaint. If plaintiff chooses to amend the complaint to include allegations of inequitable conduct, plaintiff shall specifically plead materiality and intent to deceive, the time, place and content of any alleged misrepresentations, and the identities of the parties to the misrepresentations. *See America, Inc.*, 2002 WL 24444, at *2.

### 4.     "Prosecution history estoppel"

The Complaint alleges, "By reason, *inter alia*, of amendments and/or statements made in and to the United States Patent and Trademark Office, during the prosecution of the applications that issued as the patents-in-suit, Peterson and/or Traffic Assist are estopped from construing the claims of the patents-in-suit in such a way as may cover PB Farradyne's activities and/or products." Complaint ¶ 22.

Defendants contend that prosecution history estoppel is not an affirmative defense to a patent infringement charge, and thus it cannot serve as a separate ground in a declaratory judgment complaint. Plaintiff does not address this argument in its papers, and instead only advances the general argument that "it is not true that the invalidity and unenforceability defenses asserted by PB Farradyne can have no possible bearing upon the subject matter of this litigation or could not succeed under any circumstances." Opposition at 7.

The Court agrees with defendant that plaintiff may not plead prosecution history estoppel as an affirmative defense. In *Advanced Cardiovascular*, a defendant in a patent infringement suit asserted the defense of prosecution history estoppel. *See* 41 U.S.P.Q.2d at 1773. The court held that "prosecution

history estoppel is only applicable where the doctrine of equivalents has been raised as a means of constructing an infringement claim," and thus "prosecution history estoppel is not an affirmative defense." *Id.* at 1774. The court struck with prejudice the defendant's affirmative defense of prosecution history estoppel, but also noted that the ruling did not preclude the defendant from raising prosecution history estoppel in the event the plaintiff asserted a patent infringement claim based on the doctrine of equivalents. *See also generally ACLARA Biosciences Inc. v. Caliper Tech. Corp.*, 125 F. Supp. 2d 391 (N.D. Cal. 2001) (surveying law on prosecution history estoppel).

Accordingly, the Court STRIKES plaintiff's allegations regarding prosecution history estoppel without prejudice to plaintiff arguing prosecution history estoppel during claim construction.

**5.     "Prior user defense"/"business methods"**

The Complaint alleges, "To the extent that PB Farradyne would otherwise infringe a valid claim of the '950 or '724 patents, PB Farradyne shall have a defense pursuant to Title 35, United States Code, Section 273." *Id.* at ¶ 21. Section 273 provides a personal defense to a claim of patent infringement to a person who, acting in good faith, "actually reduced the subject matter to practice at least 1 year before the effective filing date of such patent, and commercially used the subject matter before the effective filing date of such patent." 35 U.S.C. § 273(b)(1). In addition, "[a] person may not assert the defense under this section unless the invention for which the defense is asserted is for a method." *Id.* at § 273(b)(3)(A). The statute defines "method" as follows: "the term 'method' means a method of doing or conducting business." *Id.* at § 273(a)(3).

The parties dispute whether plaintiff may raise a Section 273 defense, and advance competing arguments based upon the legislative history of Section 273. The parties agree that no court has interpreted the language of Section 273, and thus it is an issue of first impression whether "method" under Section 273 is limited to internal business methods, as defendants contend, or whether "method" encompasses any methods used by a business in doing business, as plaintiff suggests. The Court believes that a fuller record will assist the determination of this question, and accordingly DENIES defendants' motion WITHOUT PREJUDICE to revisiting this issue later in the litigation.

**6.     Traffic Assist as defendant**

Traffic Assist is a "d/b/a" used by defendant Peterson's sole proprietorship and is not a separate legal entity capable of being sued or asserting any claims of infringement. Accordingly, the Court GRANTS defendants' motion to dismiss Traffic Assist. Any amended complaint shall be filed against Peterson solely. As defense counsel stated at the hearing, discovery directed at Peterson will encompass Peterson's activities d/b/a/ Traffic Assist.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS in part and DENIES in part defendants' motion, and GRANTS plaintiff leave to amend the complaint. (Docket No. 11). Plaintiff shall file an amended complaint on or before **January 20, 2006**.

Dated:   January 13, 2006

SUSAN ILLSTON
United States District Judge