IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PB FARRADYNE, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>THOMAS D. PETERSON, individually and doing business as TRAFFIC ASSIST (a California company),<br><br>　　　　Defendant.<br>　　　　　　　　　　　　　　　　　　／ | No. C 05-03447 SI<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND GRANTING LIMITED LEAVE TO AMEND** |

On May 26, 2006, the Court heard oral argument on defendant's motion to dismiss and/or strike. After careful consideration of the parties' papers and the arguments of counsel, the Court hereby GRANTS defendant's motion, and GRANTS leave to amend as to certain limited issues in this declaratory relief action.

**BACKGROUND**

On August 25, 2005, plaintiff PB Farradyne, Inc. ("Farradyne") filed this patent action against defendants Thomas Peterson, an individual, and Traffic Assist, a California company. Farradyne seeks declaratory judgment of non-infringement, invalidity and unenforceability of two patents owned by Peterson, U.S. Patent Nos. 5,523,950 ("'950 patent") and RE38,724 ("'724 patent"). Following this Court's January 17, 2006 Order Granting in Part and Denying in Part defendants' motion to dismiss, Farradyne has twice amended the complaint. The operative complaint, the Second Amended Complaint ("SAC"), is alleged against defendant Peterson individually and in his capacity doing business as Traffic

Assist.

The '950 patent is titled "Method and Apparatus for Providing Shortest Elapsed Time Route Information to Users," and was filed on May 8, 1995 and issued on June 4, 1996. *See* SAC, Ex. A. The '724 patent is titled "Method and Apparatus for Providing Shortest Elapsed Time Route and Tracing Information to Users," and was filed on November 21, 2000, and reissued on April 12, 2005. *Id.* at Ex. B.[1] These patents generally relate to a system of calculating for a commuter the quickest way to drive between two points, based on real-time information about traffic speeds on various road segments.

According to the SAC, the Metropolitan Transportation Commission ("MTC") approved and implemented a design for what is commonly known as MTC's 511 system for obtaining automobile trip information. SAC ¶ 9. Under its contract with MTC, Farradyne supplies the 511 system. *Id.*

Since at least June 2003, Peterson has alleged that Farradyne's 511 system infringes both the '950 patent and the '724 patent (or would infringe the '724 patent when issued). *Id.* at ¶ 10. Between 2003 and 2005, the parties and their counsel met and exchanged correspondence regarding Peterson's infringement allegations. *Id.* at ¶¶ 10-15. The Complaint alleges that Farradyne has not agreed to disclose its source code, and thus has a reasonable apprehension of an imminent suit by Peterson and/or Traffic Assist for alleged infringement of the '950 and '724 patents. *Id.* at ¶ 15.

Peterson has filed a motion to dismiss and/or strike the second amended complaint with prejudice, contending that plaintiff has failed to comply with the Court's January 17, 2006 order.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974), overruled on other grounds by *Davis v. Scherer*, 468 U.S. 183, 104 S. Ct. 3012 (1984).

In answering this question, the Court must assume that the plaintiff's allegations are true and

---

[1] The '724 patent is a reissue of U.S. Patent No. 5,845,227, with the same title, which was filed on February 9, 1996 and issued on December 1, 1998.

2

1 must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings. *See United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has repeatedly held that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F. 3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted). "Repeated failure to cure deficiencies by amendments previously allowed is another valid reason for a district court to deny a party leave to amend." *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 809-10 (9th Cir. 1988)

**DISCUSSION**

**1.      "Pleading a Statute" on Invalidity**

The SAC alleges, "To the extent they are alleged to be infringed, the claims of the '950 and '724 patents are invalid for failure to meet one or more of the requirements of Title 35, United States Code, including the requirements of sections 102, 103, 112, and/or other applicable statutes." SAC ¶ 29.

The Court previously held that this identical language was insufficient to allege invalidity. *See* January 17, 2006 Order at 4-5 & Original Complaint ¶ 20. Defendant moves to dismiss without leave to amend plaintiff's invalidity defenses, except for those based on prior art. Defendant contends that neither the SAC nor plaintiff's contention interrogatory answer provide any explanation of any defense under "section 112 and/or other applicable statutes," nor are there any allegations that Peterson committed any acts that would invoke the statutory bars in Section 102 that he has "abandoned the invention" (35 U.S.C. § 102(c)), or "patented . . . in a foreign country" too early (35 U.S.C. § 102(d)). Defendant also notes that plaintiff has also not alleged that any patent-in-suit is invalid for violation of any PTO rule.

Plaintiff devotes most of its opposition to arguing that it has sufficiently pled invalidity defenses

3

1  based on prior art.[2] However, as defendant's papers make clear, defendant is not seeking to dismiss
2  those defenses.

3  Plaintiff also argues that the complaint sufficiently alleges an invalidity defense based on 35
4  U.S.C. § 102(f), which bars an applicant from obtaining a patent for subject matter which he did not
5  himself invent. Plaintiff contends that by describing in detail numerous prior art publications that
6  disclose every aspect of the claimed subject matter of both the '950 and '724 patents, plaintiff has
7  sufficiently alleged that defendant did not himself invent the subject matter claimed in the two patents.
8  Defendant disagrees, contending that simply describing prior art does not sufficiently allege a
9  derivation defense because "[t]o show derivation, the party asserting invalidity must prove both prior
10 conception of the invention by another and communication of that conception to the patentee." *Gambro*
11 *Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576 (Fed. Cir. 1997).

12 The Court agrees with defendant that while plaintiff has sufficiently alleged defenses based on
13 prior art, plaintiff has not sufficiently alleged other invalidity defenses. Contrary to plaintiff's
14 assertions, the complaint does not allege the elements of a derivation defense. To the extent plaintiff
15 alleges invalidity based on other theories aside from prior art and derivation, the Second Amended
16 Complaint is completely devoid of any specific allegations in support of those defenses. As the Court
17 noted in its January 17, 2006 Order, simply alleging invalidity based upon a statute is insufficient. *See*
18 *Qarbon.com Incorporated. v. eHelp Corporation*, 315 F. Supp. 2d 1046, 1050-51 (N.D. Cal. 2004)
19 (holding that simply pleading the statute to allege patent invalidity was "radically insufficient" because
20 it did not provide the other party with a basis for assessing the claim.); *see also Advanced*
21 *Cardiovascular Systems, Inc. v. Medtronic Inc.*, 41 U.S. P.Q.2d 1770, 1773 (N.D. Cal. 1996).

22 In light of the policy favoring amendment, and because plaintiff has made some effort in this
23 regard, the Court grants plaintiff leave to amend to allege an invalidity defense based upon 35 U.S.C.

---

[2] For example, plaintiff argues that the Second Amended Complaint and its other pleadings set forth in detail the following facts supporting its invalidity defenses: (1) U.S. Patent No. 5,933,100 (Golding) discloses all of the limitations of at least Claim 1 of the '724 patent except the "sensing means," which would have been obvious in view of Peterson's admitted prior art; and (2) numerous invalidating prior art publications, including a 1988 paper by David Boyce titled "Route Guidance Systems for Improving Urban Travel and Location Choices," published in the Journal of Transportation Research, describe and anticipate or render obvious ever element of several claims of the '950 patent. *See* SAC ¶¶ 18, 24, 29.

4

1 § 102(f). However, the Court denies leave to amend to allege any other invalidity defense (aside from
2 the prior art defenses that are already alleged and *not* the subject of defendant's motion) because
3 plaintiff has had ample opportunity to cure the pleading deficiencies and failed to do so. *See McGlinchy*,
4 845 F.2d at 809-10 (holding district court properly denied leave to amend when plaintiff had twice
5 amended complaint without curing deficiencies). The Court's previous order instructed plaintiff that
6 simply pleading invalidity based on a statute was insufficient; despite this clear admonition, plaintiff
7 re-pleaded invalidity based on a statute.

8 At the hearing, plaintiff stated that it needed to gather additional information based on expert
9 review in order to plead invalidity under Section 112. As an initial matter, the Court notes that plaintiff
10 did *not* raise that matter in connection with the prior motion to dismiss, which also involved plaintiff's
11 pleading of a Section 112 defense, nor did plaintiff include this argument in its opposition brief.
12 Moreover, as the Court informed plaintiff at the hearing, this case has been pending since August 2005,
13 plaintiff chose to file this declaratory relief action, and the Section 112 invalidity defense has been plead
14 since the original complaint. All of these factors, combined with plaintiff's demonstrated inability to
15 cure the pleading deficiencies, militate in favor of denying leave to amend.

17 **2.     Inequitable Conduct**
18     **A.     '724 Patent**

19 The Second Amended Complaint alleges that defendant's patent attorney made a specific
20 misrepresentation in September 2001 which led to the reisssue of the '724 patent. *See* SAC ¶¶ 19-23.
21 Defendant does not challenge the sufficiency of these allegations, but seeks to limit plaintiff's claim of
22 inequitable conduct to this single alleged misrepresentation. Plaintiff does not really address this issue
23 in its opposition.

24 The Court GRANTS defendant's motion and, for all of the reasons set forth *supra*, holds that
25 plaintiff is limited to the single claim of inequitable conduct as alleged in the Second Amended
26 Complaint with respect to the '724 patent.

**B.     '950 Patent**

Defendant contends that the Second Amended Complaint fails to allege any specific inequitable conduct with respect to the '950 patent, yet continues to generally allege that the '950 patent is unenforceable "by reason of inequitable conduct before the United States Patent and Trademark Office during the prosecution of the applications that issued as the patents-in-suit, including by, *inter alia*, making false statements and/or failing to disclose information material to patentability . . . ." SAC ¶ 31. Defendant requests that the Court strike or dismiss, and enter judgment without leave to amend with respect to: (1) paragraph 31 of the Second Amended Complaint; and (2) plaintiff's claim that the earlier, '950 patent is unenforceable for inequitable conduct.

Citing paragraphs 24 and 31 of the Second Amended Complaint, plaintiff's opposition brief counters that it has specifically alleged inequitable conduct with respect to the '950 patent because the complaint alleges that Peterson failed to disclose material prior art to the PTO during the prosecution of the application which issued as the '950 patent. Paragraph 24 of the SAC alleges,

> In the late 1980s, vehicle route guidance and navigation was an active field for both academic and industry research. Trial programs were set up in locations including Austria (ARISE), Berlin (LISB), Canada (Qroute), Japan (ATICS), and London (Autoguide). Systems for providing shortest time route information to travelers using occupancy and flow measurements provided by roadway sensors were both in use and described in numerous published articles in the transportation studies literature more than a year before Peterson filed his first patent application. These references are invalidating under 35 U.S.C. § 102(b) and were never before the '950 examiners. One example, a paper by Professor David Boyce entitled "Route Guidance Systems For Improving Urban Travel and Location Choices," published in the Journal of Transportation Research in 1988 (three years before Peterson filed his first patent application), describes and anticipates every element of several claims in the '950 Patent. . . .

SAC ¶ 24.[3] Plaintiff contends that Peterson's failure to provide material prior art is inequitable conduct, and thus the Second Amended Complaint sufficiently alleges an unenforceability defense with respect to the '950 patent.

Defendant contends that Paragraph 24 is insufficient to plead inequitable conduct because there are no allegations that Peterson or his attorney knew of the Boyce article or the cited reference and withheld them from the PTO with the requisite knowledge of materiality and intent to deceive. The

---

[3] As quoted *supra*, paragraph 31 generally alleges that the '950 and '724 patents are unenforceable due to inequitable conduct.

6

1 Court agrees. The Court's January 17, 2006 Order dismissing plaintiff's inequitable conduct allegations
2 instructed that an amended complaint must specifically plead materiality and intent to deceive, the time,
3 place and content of any alleged misrepresentations, and the identifies of the parties to the
4 misrepresentations. *See* Order at 6 (quoting *Ferguson Beauregard/Logic Controls v. Mega Systems,*
5 *LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003); *America, Inc. v. Genus, Inc.*, 2002 WL 24444, *2 (N.D. Cal.
6 Jan. 9, 2002) ("Allegations of inequitable conduct involve fraud and are subject to the heightened
7 pleading requirements of Federal Rule of Civil Procedure 9(b)."). Defendant is correct that the Second
8 Amended Complaint fails to comply with this Court's January 17, 2006 Order and the pleadings
9 requirements for inequitable conduct.

10 At the hearing, plaintiff's counsel raised a different argument regarding inequitable conduct and
11 the '950 patent. Plaintiff's counsel contended, for the first time, that it was alleging that the allegations
12 of inequitable conduct with respect to the prosecution of the '724 patent "relate back" to the '950 patent.
13 Citing Paragraphs 16 through 24 of the Second Amended Complaint, plaintiff's counsel asserted that
14 as a result of defendant's inequitable conduct during the prosecution of the '724 patent, the patent
15 office's hands "became soiled," and that this "reached back" to infect the '950 patent.

16 With respect to this argument, the Court makes the following observations. First, defendant
17 specifically anticipated this argument and addressed it in the moving brief, and included citations to case
18 law. Second, plaintiff's opposition brief *did not* address this argument, and indeed appeared to
19 specifically disavow this theory of inequitable conduct. *See* Pl's Opp'n at 6:13-16 ("Thus, Peterson's
20 contention that PBF has given no fact or reason 'explaining how a statement made in 2001 [during the
21 prosecution of the '724 patent] can possibly be material to the issuance of the '950 patent five years
22 earlier or have any relationship to the equity sought here' is a strawman and utterly beside the point.").

23 Finally, defendant is correct that, to the extent plaintiff seeks to allege inequitable conduct
24 regarding the '950 patent, it cannot do so by reference to alleged inequitable conduct that occurred five
25 years later in connection with the prosecution of the '724 patent. Plaintiff alleges that Peterson engaged
26 in inequitable conduct by failing to disclose the Golding ('100) patent when he prosecuted the '724
27 patent in 2001. SAC ¶¶ 16-24. The Golding patent was filed on December 27, 1995 and issued on
28 August 13, 1999. SAC ¶¶ 17, 22, Ex. J. The '950 patent was filed on May 8, 1995 and issued on June

**United States District Court**
For the Northern District of California

1  4, 1996. SAC, Ex. A. Accordingly, as a matter of law, plaintiff cannot allege a claim of inequitable
2  conduct regarding the '950 patent based upon alleged misstatements concerning the Golding patent.
3  *See SSIH Equipment, S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365, 378-79 (Fed. Cir. 1983) (rejecting
4  "as a matter of law" claim of unenforceability based on inequitable conduct alleged to have occurred
5  three years after patent issued, and where such conduct concerned allegedly "interrrelated" patents for
6  different inventions). Accordingly, the Court GRANTS defendant's motion and STRIKES all
7  allegations of inequitable conduct with respect to the '950 patent.

### 3. "Prior User Defense"/"Business Methods"

10  The Second Amended Complaint alleges, "To the extent that PB Farradyne would otherwise
11 infringe a valid claim of the '950 or '724 patents, PB Farradyne shall have a defense pursuant to Title
12 35, United States Code, Section 273." SAC at ¶ 30. Section 273 provides a personal defense to a claim
13 of patent infringement to a person who, acting in good faith, "actually reduced the subject matter to
14 practice at least 1 year before the effective filing date of such patent, and commercially used the subject
15 matter before the effective filing date of such patent." 35 U.S.C. § 273(b)(1). In addition, "[a] person
16 may not assert the defense under this section unless the invention for which the defense is asserted is
17 for a method." *Id.* at § 273(b)(3)(A). The statute defines "method" as follows: "the term 'method'
18 means a method of doing or conducting business." *Id.* at § 273(a)(3).

19  Defendant earlier moved to dismiss this defense, arguing that the Section 273 defense is limited
20 to internal business methods and did not, as a matter of law, cover the "methods" involved in the
21 patents-at-issue. In the January 17, 2006 Order, the Court denied defendant's motion to dismiss these
22 allegations without prejudice to revisiting this issue upon a fuller record.

23  Defendant now contends that neither the Second Amended Complaint nor plaintiff's answer to
24 the contention interrogatory disclose any facts in support of plaintiff's Section 273 defense. According
25 to defendant, plaintiff "dropp[ed] the defense for the month in which it answered the interrogatory, [and
26 thus] evaded the Court's requirement that is disclose facts supporting its defenses." Motion to Dismiss
27 at 5. Defendant states that plaintiff failed to supplement its interrogatory answer by explaining the facts
28 supporting this defense. Def's Reply at 8. Plaintiff does not deny that it has not supplemented its

1 interrogatory response, and instead simply states that it has adequately pled this defense and that
2 defendant is on notice of this defense due to plaintiff's earlier opposition to the motion to dismiss.

3 The Court DENIES this aspect of defendant's motion. As defendant's counsel acknowledged
4 during the hearing, defendant does not contend (in this motion) that plaintiff has not adequately plead
5 a Section 273 defense. Instead, defendant contends that plaintiff has failed to adequately disclose facts
6 in support of such a defense. However, to the extent that defendant complains that plaintiff's discovery
7 responses are inadequate, defendant may bring a motion to compel. If defendant is correct and plaintiff
8 does not have factual or evidentiary support for its Section 273 defense, that may be addressed through
9 a motion for summary judgment.

### 4. Other "Unenforceability" Charges

Defendant requests the Court to strike any allegations that the patents are "unenforceable" generally and apart from inequitable conduct. Defendant cites Paragraphs 3-6 of the prayer for relief, in which plaintiff seeks a declaration that the patents are "unenforceable" generally and that plaintiff "shall have a defense" even if the patents are valid and infringed. Defendant also notes that in the Joint Case Management Conference Statement, plaintiff contended that one issue in dispute is "whether the '950 and '724 patents are unenforceable under the equitable doctrines [sic] of unclean hands." Docket No. 35 at 3:1-3. However, the Second Amended Complaint does not allege any facts supporting an accusation of unclean hands, nor is there any other equitable defense to enforcement mentioned or supported. According to defendant, plaintiff's interrogatory answer also does not recite any facts to support an unenforceability defense.

Plaintiff does not address this argument in its opposition, nor did plaintiff's counsel address this issue at the hearing. As a general matter, defendant is correct that general allegations of "unenforceability" unsupported by more specific allegations are insufficient because "unenforceability" is a general term covering a number of different defenses. *Cf. Cardiogenesis Corp. v. PLS Syst. Inc.*, 1997 WL 12129, *1 (N.D. Cal. Jan. 8, 1997) (Williams, J.) ("'Unenforceable' can also serve as an umbrella for other defenses such as fraud, estoppel, unclean hands, and patent misuse."). Accordingly, because plaintiff has been afforded numerous opportunities to amend the complaint and has thus far

9

1 failed to cure this pleading deficiency, the Court GRANTS defendant's motion and DENIES leave to
2 amend on this issue.

### 5.     Entitlement to Money Damages

Although the Second Amended Complaint only seeks declaratory relief, reasonable attorneys' fees, and "any such other relief deemed just and proper," plaintiff stated in the Joint Case Management Conference Statement that it seeks "damages in an amount to be proven at trial, including without limitation reasonable royalties and lost profits, with interest." Docket No. 35 at 3:19-21. Defendant requests that the Court strike or grant judgment against plaintiff on its apparent claim for lost profits or reasonable royalties, contending that neither the Second Amended Complaint nor plaintiff's interrogatory answer point to any rule or legal principle in the Declaratory Judgment Act that would allow lost profits or reasonable royalties. Defendant also notes that while the measure of damages for patent infringement under 35 U.S.C. § 284 is a reasonable royalty, and in some cases lost profits, those damages are awarded to a patentee, and plaintiff does not allege that defendant has infringed any patent or committed any tort.

Plaintiff's response is internally inconsistent and general, simply stating that the complaint has met the standard for notice pleading (despite the fact that the complaint does not seek damages), and alternatively that the Court should grant plaintiff leave to amend to assert a claim seeking monetary damages. Neither in its papers nor at the argument did plaintiff specify what claim it wished to allege that would form a basis for seeking money damages. Instead, plaintiff's opposition simply states, "as this case proceeds, plaintiff expects to discover additional information concerning money damages, including lost profits, suffered by PB Farradyne as a result of Peterson's interference with one or more of PB Farradyne's business relationships." Pl's Opp'n at 9. These vague statements, combined with plaintiff's failure thus far to allege a claim for money damages, lead the Court to conclude that there is no basis for granting plaintiff leave to amend to seek money damages. Accordingly, the Court GRANTS defendant's motion on this issue.

## CONCLUSION

1  For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion to dismiss and/or strike, (Docket No. 44), and GRANTS plaintiff leave to file an amended complaint as set forth above.  Plaintiff shall file an amended complaint by **June 12, 2006**.

**IT IS SO ORDERED.**

Dated:   June 5, 2006

SUSAN ILLSTON
United States District Judge